IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER J. FASCIANO,                )
                                        )
              Plaintiff,                )
                                        )
         vs.                            )   Civil Action No. 08-802
                                        )
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
              Defendant.                )

O R D E R

AND NOW, this 23rd day of March, 2009, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. §401, et seq., and denying plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. §1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. §405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may

neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]

Plaintiff challenges the decision of the Administrative Law Judge ("ALJ") regarding his mental health impairments on several grounds. While, as stated, the Court finds that substantial evidence supports the decision, a few points require further clarification. Plaintiff's primary argument is that the ALJ erred in not specifically including the Global Assessment of Functioning ("GAF") scores he received from several different treating mental health care providers in the residual functional capacity ("RFC") determination or the hypothetical question to the vocational expert ("VE"). Essentially, he argues that the GAF scores he received from his treating physicians were consistent with one another and uncontradicted, and that the ALJ's failure to account for this in the RFC or hypothetical question renders his decision unsupported by substantial evidence. The Court disagrees.

GAF scores, while certainly evidence to be considered, do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009). Indeed, a GAF score between 41 and 50, the range in which Plaintiff's GAF scores fell, reflects "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR** any serious impairment in social, occupational, **or** school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000). Accordingly, the mere fact that several treating and examining mental health care providers agreed on a certain GAF score would not indicate that Plaintiff is disabled.

Nonetheless, a GAF score is evidence that an ALJ should consider in determining a claimant's impairments and limitations in setting forth the claimant's RFC and in fashioning a hypothetical question to the VE. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. § 404.1545(a). The ALJ must consider all relevant evidence in determining an individual's RFC, and the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). Further, a hypothetical question to a VE must accurately portray the claimant's physical and mental impairments, although it need reflect only those impairments that are supported by the record.

(continued...)

¹(...continued)
Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

In this case, it is unclear how or why Plaintiff's GAF scores would affect his RFC. While Plaintiff argues that "five psychologists all agree on plaintiff's significant limitations related to his mental impairments," this is not true. Plaintiff's treating and examining mental health care providers did not all agree on any specific work-related restrictions. Plaintiff's GAF scores, standing alone, do not indicate whether he faces limitations in working or what those limitations would be. Indeed, none of these mental health professionals specifically indicated that Plaintiff's GAF score referred to any specific work-related impairment or limitation. As stated above, inability to hold a job is just one of several possible factors in determining a GAF score, and even that factor is vague as to a claimant's actual limitations.

Since a GAF score does not directly correlate to a finding of disability, and since a GAF score can mean many things, an ALJ must look beyond the score itself and consider the findings and opinions of the medical professionals who assigned these scores. While a GAF score can assist an ALJ in understanding the limitations contained in the opinions of medical professionals, the actual number itself does little to describe the specific functional limitations caused by the claimant's impairments. See Howard, 276 F.3d at 241 ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). It is the limitations faced by a claimant, and not an ambiguous GAF score, that must be included in the RFC and hypothetical. The RFC and hypothetical question in this case contain numerous limitations based on Plaintiff's mental health impairments. In no way does Plaintiff demonstrate or even argue how any of these limitations are contradicted by his GAF scores, or how including his GAF scores would have changed the actual limitations he faced. He appears to be arguing simply that the number itself should have been included which, as explained, is an argument without merit. It should be noted that there is actually some support for the proposition that a GAF score of 50, the score Plaintiff most commonly received, is a score which indicates the ability to perform some substantial gainful activity. See Hillman v. Barnhart, 48 Fed. Appx. 26, 30 n.1 (3d Cir. 2002).

In this case, it is clear that the ALJ did indeed consider Plaintiff's GAF scores in determining his RFC and the hypothetical question. First, as discussed above, the ALJ did include numerous limitations based on the evidence from Plaintiff's mental health providers; contrary to Plaintiff's contention, the record is clear that the ALJ did not reject the opinions of his treating and examining physicians, but rather, that the limitations he did find were derived from their findings. (R. 26). Moreover, he acknowledged Plaintiff's GAF scores and, in fact, expressly addressed the GAF score of 45 assigned to Plaintiff by Dr. Charles J. Franchino, which, other than a higher score assigned shortly thereafter which the ALJ found was derived from earlier reports, was the most recent score Plaintiff had received. (R. 24). It was unnecessary for the ALJ to discuss each GAF score at length, when he did address the most recent in detail and discussed the findings of all Plaintiff's health care providers in detail. In any event, as discussed, Plaintiff makes no attempt to explain how including a GAF score of 45 in his RFC would have changed the limitations already included in that determination.

The Court likewise finds no merit in Plaintiff's other arguments. Contrary to Plaintiff's
(continued...)

Therefore, IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment (document No. 8) is DENIED and defendant's Motion for Summary Judgment (document No. 10) is GRANTED.

                                                */s/ Donetta W. Ambrose*
                                       United States District Judge
                                       (For Judge Alan N. Bloch)

ecf:       Counsel of record

---

[1](...continued)
contentions, the ALJ did not interpret raw data in evaluating evidence regarding Plaintiff's treatment with Dr. Tad Gorske, Ph. D. Rather, he merely considered certain evidence of record, particularly, the T scores from Plaintiff's MMPI-2 test, in addressing Dr. Gorske's findings that themselves indicate that Plaintiff may have been overestimating his true psychological profile. (R. 348). Indeed, the ALJ makes reference to other places in the record that indicate an attempt by Plaintiff or his family to manipulate his doctors or overstate his symptoms. (R. 22, 23, 24, 218, 227). The ALJ did not make his own T score findings based on Plaintiff's answers, but merely considered the T scores already found by Dr. Gorske. It should be noted that Dr. Gorske did also provide certain other test data. This is not a case in which the ALJ attempted to interpret Plaintiff's behavior, or to reinterpret answers given by Plaintiff on the MMPI-2 test; it is simply an ALJ considering evidence of that test. In any event, the ALJ relied on several grounds other than the T scores in deciding to afford only minimal weight to Dr. Gorske's opinion. (R. 24).

      Finally, the statements allegedly made by the ALJ almost a year after the final hearing in this case and more than seven months after the ALJ issued his decision do not demonstrate impermissible bias. Indeed, the statements, assuming they were actually made by the ALJ and assuming they were part of the record, do no more than express an opinion regarding the existence of fraud in social security cases; they in no way demonstrate a bias toward or against claimants in general, much less toward or against Plaintiff. Indeed, the statements have nothing to do with Plaintiff or this case and, as mentioned, were allegedly made long after the ALJ's involvement in this case. Nor is bias demonstrated by the fact that the ALJ did not interpret all of the evidence in the manner in which Plaintiff would have preferred.

      Accordingly, substantial evidence support's the ALJ's decision.